UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK E. POWERS,

    Plaintiff,               Case No.:

v.

CATALENT PHARMA SOLUTIONS, LLC.,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff, MARK E. POWERS, by and through his undersigned counsel and sues the Defendant, CATALENT PHARMA SOLUTIONS, LLC. ("CATALENT") and states as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367.

2. Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3. Plaintiff, MARK E. POWERS, is an adult resident of Hillsborough County, Florida. At all times material, Plaintiff was an employee of Defendant within the meaning of the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Florida Civil Rights Act.

4. Defendant, CATALENT, is a Foreign Limited Liability Company authorized and doing business in this Judicial District. At all times material, CATALENT employed Plaintiff. At all times material, CATALENT employed the requisite number of employees and, therefore, is an employer as defined by the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Florida Civil Rights Act.

## GENERAL ALLEGATIONS

5. At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

6. At all times material, Plaintiff was qualified to perform his job duties within the legitimate expectations of his employer.

7. Plaintiff has retained the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

8. Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

9. On November 1, 2021, Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

10. On May 14, 2022, the EEOC issued a Notice of Right to Sue related to Plaintiff's Charge of Discrimination. This Complaint is filed within ninety (90) days of the issuance of the Notice of Right to Sue; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

11. Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charge.

## FACTUAL ALLEGATIONS

12. Plaintiff is a 62-year-old male.

13. In or around August 2018, Plaintiff began his employment with Defendant as a full-time Site Security Leader/Leader, Site Security. In this role, Plaintiff was part of Defendant's senior management team, known as the Site Leadership Team (SLT).

14. On May 4, 2021, Plaintiff suffered an on-the-job injury. Specifically, a table that was not evaluated by Defendant's Environmental Health and Safety (EH&S) Department for potential safety concerns fell on Plaintiff's left foot and severely fractured a bone in Plaintiff's left big toe leaving bruising on his foot and other toes. Ultimately, specialists found that the top bone in Plaintiff's left big toe was severed.

15. Plaintiff immediately notified Tyler Griffin (Acting Director of EH&S) of his injury and told Griffin that he was going home to ice and treat his injury.

16. In addition, Plaintiff's supervisor, John Maddox (General Manager, approximate age 45) was notified of Plaintiff's injury.

17. On May 5, 2021, Plaintiff met with Vicky Gooden (Industrial Nurse). Gooden examined Plaintiff's toes/foot and confirmed that the bone in Plaintiff's big toe was cracked or broken. Later, Maddox went to Plaintiff's office and inquired about his injury.

18. For the first four weeks after Plaintiff's injury, Plaintiff wore loose-fitting shoes, limited his walking, and iced his foot/toes as needed. During this time, Plaintiff also met with Gooden to change bandages and buddy tape. However, Plaintiff did not miss work, nor did Plaintiff request a light-duty position.

19. In or around early June 2021, Maddox issued Plaintiff a written warning for not completing training on time.

20. By early June 2021, Plaintiff's injured toe was not improving, so Gooden sent Plaintiff to Concentra where Plaintiff learned from Amy Macher (Treating Clinician) that he had an infection in his toe. As a result, Plaintiff was prescribed antibiotics by Macher, which made Plaintiff's injury an OSHA recordable/reportable event and negatively impacted the site's safety performance score.

21. While under the care of Macher, Plaintiff continued to wear loose-fitting shoes, limited his walking whenever possible, and continued to ice his toe and foot as needed. During this time, Plaintiff worked every day of the site's shutdown (July 7, 2021, to July 21, 2021) and often worked 12 hours or more per day. Maddox refused, as in prior years, to release funding for additional temporary guards to support shift changes, etc. Again, Plaintiff did not miss work and did not request a light-duty position.

22. Plaintiff treated with Macher until mid-July 2021, then she referred Plaintiff to a specialist, Dr. Alexander Pappas.

23. In August 2021, Dr. Pappas, informed Plaintiff that his injury would take approximately six (6) to eight (8) months to heal fully. Plaintiff informed Gooden of the diagnosis.

24. On August 6, 2021, Sedgwick Claims Management Services informed Plaintiff via letter that he reached maximum medical improvement (MMI) as of August 5, 2021.

25. In or around late July/early August 2021, Plaintiff met with Maddox for his performance evaluation.  Maddox lowered Plaintiff's performance evaluation from the year before to a "partially met expectation" despite being described as an important part of the team, "hard working," and "committed."  A main criticism in the performance evaluation was that Plaintiff did not maintain on-time training in FY21.  However, for the training at issue, Plaintiff was a member of the U.S. team that created the program that was the basis for the training.  Moreover, other members of the senior leadership team (or in senior management positions) either personally had uncompleted trainings or had reports under them that had uncompleted trainings; however, they did not have their performance evaluations negatively impacted.

26. During the week of August 30, 2021, Plaintiff met with Maddox and he informed Plaintiff of his merit increase and bonus for the following year, based on the FY21 efforts.  Unfortunately, Plaintiff's merit increase was less than 2% and the bonus was decreased approximately 40% from the eligible amount.

27. On September 7, 2021, Plaintiff was terminated from his employment with Defendant.  Plaintiff met with Maddox and Jeff O'Dell (Director of Human

Resources).  Maddox told Plaintiff that he did not have "good news" and that, effective immediately, Plaintiff was terminated.  Plaintiff asked Maddox if he would receive a severance and Maddox said "no."  Then, Plaintiff asked Maddox for the reason for his termination.  Maddox told Plaintiff that O'Dell would "explain," and Maddox left the room.

28.     O'Dell apologized, said that he was not aware that Plaintiff was being fired, was not involved, and only found out that morning.  Again, Plaintiff asked O'Dell for a reason for his termination.  O'Dell told Plaintiff that he understood Maddox was "*looking for someone younger*."   At that point, O'Dell said that he was authorized to offer Plaintiff the opportunity to resign in lieu of termination.  O'Dell agreed that Defendant could pay Plaintiff through the end of the month and pay out Plaintiff's accrued PTO.  O'Dell asked that Plaintiff email him a resignation letter from Plaintiff's work email unless the Information Technology department had already shut off Plaintiff's email.  Plaintiff complied and O'Dell helped Plaintiff gather his personal belongings.  Later that evening, O'Dell sent me a text message stating that Maddox was "ok with the resignation as you gave it."

29.     Following Plaintiff's termination, most, if not all of Plaintiff's job duties and responsibilities were given to Eric Woosley (Director of EH&S, approximately 49 years old). Plaintiff is aware of this fact because Woosley had a phone call with Plaintiff to review Plaintiff's active projects and answer questions

regarding his day-to-day activities. Woosley told Plaintiff that he was assuming Plaintiff's job duties temporarily until a replacement was hired. After Plaintiff's conversation with Woosley, Plaintiff spoke with O'Dell who told Plaintiff that the assignment of Plaintiff's responsibilities to Woosley was permanent.

30. As of October 14, 2021, Defendant posted a job opening for Leader, Site Security. Thereafter, Plaintiff was replaced by someone outside of Plaintiff's protected classes.

31. Maddox's desire to find someone younger is consistent with his prior discriminatory behavior toward older employees. For example, Maddox wanted Plaintiff to set up Sharlene Feingold (Administrative Assistant) to fail so Maddox could get rid of her. Maddox explained that Plaintiff should give Feingold a difficult project, but not too difficult, because he did not want it to be too obvious that she was being set up to fail. Then, when Feingold failed, Defendant would have grounds to fire her. Maddox told Plaintiff that Feingold felt "entitled" and the site could get "someone younger."

32. Moreover, Maddox made age-based comments about Kathy Fontaine (Executive Administrative Assistant, early 60s). Specifically, Plaintiff heard Maddox suggest to O'Dell that Fontaine be terminated for not coming to the site for work. O'Dell cautioned Maddox that Defendant would not like an age discrimination lawsuit, so O'Dell recommended that Maddox offer Fontaine a

severance package. Maddox declined and said that Fontaine would not be offered a severance package because he would either get her to quit or fire her. Maddox also commented that Fontaine worked for Defendant "long enough" and should have set aside enough money to retire.

## COUNT I
## AGE DISCRIMINATION IN EMPLOYMENT ACT – DISCRIMINATION

33. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-two (32).

34. Plaintiff is a member of a protected class under the Age Discrimination in Employment Act and was qualified for his job with Defendant.

35. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against on account of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Specifically, Defendant issued Plaintiff a lower merit pay increase and terminated Plaintiff's employment because of his age.

36. Defendant knew or should have known of the discrimination.

37. Defendant's unlawful and discriminatory employment practices toward were intentional and willful.

38. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

39. As a result of Defendant's unlawful discrimination, has suffered and continues to suffer damages.

WHEREFORE, Plaintiff demands a trial by jury and judgment against Defendant for:

    a. Back pay and benefits;

    b. Interest on back pay and benefits;

    c. Front pay and benefits;

    d. Liquidated damages;

    e. Injunctive relief;

    f. Attorneys' fees and cost;

    g. For any other relief this Court deems just and equitable.

## COUNT II
## FLORIDA CIVIL RIGHTS ACT – AGE DISCRIMINATION

40. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-two (32).

41. is an individual entitled to protection under the Florida Civil Rights Act, Chapter 760, *Florida Statutes*.

42. Plaintiff is an employee within the meaning of the Florida Civil Rights Act.

43. Plaintiff was a member of a protected class under the FCRA and was qualified for his job with Defendant.

44. By the conduct described above, Defendant has engaged in unlawful employment practices and discriminated against because of Plaintiff's age. Specifically, Defendant discriminated against by issuing Plaintiff a lower merit pay increase and terminating Plaintiff's employment with Defendant.

45. The above-described acts of age discrimination constitute a violation of the Florida Civil Rights Act, for which Defendant is liable.

46. Defendant's unlawful and discriminatory employment practices toward were intentional.

47. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

48. As a result of Defendant's unlawful discrimination, has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.    Punitive damages;

  f. Attorneys' fees and costs;

  g. Injunctive relief; and

  h. For any other relief this Court deems just and equitable.

## COUNT III
## AMERICANS WITH DISABILITIES ACT – DISCRIMINATION

49. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-three (33).

50. Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq*.

51. Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

52. Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended. Specifically, Plaintiff's foot injury and infection substantially limited one or more major life activities and/or one or more major bodily functions.

53. Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of his job.

54. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of his known

disability, and/or because Defendant regarded him as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant issued Plaintiff a lower merit pay increase and terminated Plaintiff's employment.

55. The above-described acts of disability discrimination constitute a violation of the Americans with Disabilities Act, as amended, for which Defendant is liable.

56. Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

57. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

58. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;
    b. Prejudgment interest on back pay and benefits;
    c. Front pay and benefits;
    d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;
    e. Attorneys' fees and costs;

f.  Injunctive relief; and

h.  For any other relief this Court deems just and equitable.

## COUNT IV
## FLORIDA CIVIL RIGHTS ACT ("FCRA") DISABILITY/HANDICAP DISCRIMINATION

59. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-two (32).

60. Plaintiff is an individual entitled to protection under the Florida Civil Rights Act, *Fla. Stat.* §760, *et seq*.

61. Plaintiff is an employee within the meaning of the Florida Civil Rights Act.

62. Plaintiff is an individual with a disability/handicap within the meaning of the Florida Civil Rights Act.  Specifically, Plaintiff's foot injury and infection substantially limited one or more major life activities and/or one or more major bodily functions.

63. Plaintiff was a qualified individual with a disability within the meaning of the Florida Civil Rights Act because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of his job.

64. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of his known disability, and/or because Defendant regarded him as having a disability, and/or

because of Plaintiff's record of having a disability in violation of the Florida Civil Rights Act. Specifically, Defendant issued Plaintiff a lower merit pay increase and terminated Plaintiff's employment.

65. The above-described acts of disability discrimination constitute a violation of the FCRA, for which Defendant is liable.

66. Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

67. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

68. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e. Attorneys' fees and costs;

    f. Injunctive relief; and

      h.      For any other relief this Court deems just and equitable.

## COUNT V
## WORKERS' COMPENSATION RETALIATION/COERCION

69. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-two (32).

70. Plaintiff was an employee within the meaning of Florida Statute § 440.02 (1993).

71. By reason of Plaintiff's valid claim for Workers' Compensation benefits and/or Plaintiff's attempt to exercise his rights under Florida's Workers' Compensation law, Defendant retaliated against Plaintiff by: (1) issuing Plaintiff a written warning, (2) issuing Plaintiff a poor performance evaluation, (3) issuing Plaintiff a lower merit pay increase, and (4) terminating Plaintiff's employment.

72. Defendant took the above unlawful actions against Plaintiff by reason of Plaintiff's valid claim for Workers' Compensation, in violation of Florida Statute § 440.205 (1993).

73. As a direct, natural, foreseeable and proximate result of the Defendant's adverse employment actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands a trial by jury and judgment against Defendant, and prays for the following relief:

      a.      Back pay;

      b.      Future lost wages;

  c. Compensatory damages for emotional distress;

  d. Punitive damages;

  e. and such other relief to which the Plaintiff may be justly entitled.

## DEMAND FOR JURY TRIAL

74. Plaintiff, MARK POWERS, demands a trial by jury on all issues so triable.

DATED this 11th day of August 2022.

**FLORIN GRAY BOUZAS OWENS, LLC**

*Gregory A. Owens*_____
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
**WOLFGANG M. FLORIN, ESQUIRE**
Florida Bar No.: 907804
wolfgang@fgbolaw.com
16524 Pointe Village Drive, Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*