UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK E. POWERS,

    Plaintiff,

v.                                        Case No. 8:22-cv-1842-VMC-CPT

CATALENT PHARMA SOLUTIONS, LLC,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Catalent Pharma Solutions, LLC's Motion for Summary Judgment (Doc. # 32), filed on October 23, 2023, seeking summary judgment on all claims in this Age Discrimination in Employment Act (ADEA), Americans with Disabilities Act (ADA), Florida Civil Rights Act (FCRA), and worker's compensation retaliation case. Plaintiff Mark E. Powers responded on November 13, 2023. (Doc. # 35). Catalent replied on November 27, 2023. (Doc. # 38). For the reasons that follow, the Motion is granted.

**I.**    **Background**

    **A.** **Catalent's Business and Relevant Policies**

Catalent is a global provider of delivery technologies, development, drug manufacturing, biologics, gene therapies,

and consumer health products with a manufacturing facility in St. Petersburg, Florida. (Jackson-Hill Decl. at ¶ 3). Catalent maintains equal opportunity policies that strictly prohibit discrimination in hiring, training, promotion, and decisions about discipline or termination of employment. (Id. at ¶ 4). Catalent also maintains an anti-retaliation policy which strictly prohibits retaliation against an employee for, among other things, filing a claim of harassment or discrimination. (Id. at ¶ 5).

All Catalent employees must complete annual trainings in a timely fashion, as Catalent is an FDA and DEA regulated site. (Maddox Depo. at 14:3-25; O'Dell Depo. at 22:1-23:8). Indeed, Catalent employees are expected to achieve at least 95% on-time training. (O'Dell Depo. at 53:8-12; Maddox Depo. at 15:16-22).

The progressive discipline policy at Catalent provides for a verbal warning, then a written warning, then a final warning, followed by separation. Although there are usually three steps before termination, Catalent may move straight to termination based on the severity of the infraction. (O'Dell Depo. at 21:12-21; Griffin Depo. at 7:4-20, 10:11-19; Woosley Depo. at 6:8-18; Maddox Depo. at 10:4-15).

### B. __Employment with Catalent__

Catalent hired Powers in August 2018 as a Site Security Leader when he was fifty-eight years old. (Powers Depo. at 38:9, 42:16-17, 55:6-12). His duties included helping with site safety, ensuring Catalent followed federal government regulations from the DEA, visitor control and management, and emergency coordination. (Id. at 42:18-43:3).

During Powers's employment, Jeffrey O'Dell was the Human Resources Director; he was fifty-three years old when Catalent hired him in March 2017. (O'Dell Depo. At 5:24-25, 15:22-23). Catalent has approximately 700 employees at the St. Petersburg facility of whom only ten are on the Site Leadership Team, including Powers during his tenure with Catalent. (Maddox Depo. At 118:9-22).

In 2019, Catalent gave Powers a "Partially Met Expectations" performance review, noting that he struggled with communication. (Powers Depo. at 90:6-92:8, Ex. 5).

In April 2019, Catalent hired John Maddox, and in March 2020 he was transferred to the St. Petersburg location as the General Manager and became Powers's direct supervisor. (Id. at 58:10-20; Maddox Depo. at 7:11-8:4).

Powers did not think Maddox was a fair supervisor. Powers testified that Maddox showed favoritism to younger female

3

employees, and Maddox did not approve Powers's request for capital expenditures. (Powers Depo. at 58:21-59:5, 65:3-25).

In 2020, Maddox scored Powers as "Meets Expectations" on a performance evaluation. (Doc. # 36-2, Ex. 2).

C. **Failure to Complete Training**

In April 2021, Maddox began to address Powers's late training which was 225 days late as of May 28, 2021. Powers was aware that he needed to complete his training. (Powers Depo. at 93:20-24, 95:8-10, 98:12-14). Maddox discussed Powers's late training with him in April 2021, May 2021, and June 2021; issued Powers a written warning on June 22, 2021; discussed his late training again in July 2021; and discussed his late training again on August 6, 2021, during his annual performance review. (Maddox Depo. at 117:1-118:2, 120:23-121:13).

Powers confirmed that Maddox emailed him on April 14, 25, and May 5, 25, and 27, 2021, to complete his late training and verbally spoke to him about the late training on May 28, 2021. (Powers Depo. at 96:9-97:7). Despite this, Powers failed to complete his training by the original deadline of the end of May 2021. (Id. at 97:19-98:3).

Maddox testified that Powers never asked Maddox for an exemption from his required training and Maddox is unaware of

any exemption ever being offered at Catalent for timely completing training. (Maddox Depo. at 51:22-52:22). For his part, Powers testified that he told Maddox he did not want to take the food defense training because he was afraid completion of the training would result in him becoming "responsible for the food defense program at the site." (Powers Depo. at 94:5-9). Powers had "asked [Maddox] to get relieved from [the food defense] training given [Powers's] experience in food defense" but he "couldn't get the waiver to do that." (Id. at 94:9-14). Regardless, Maddox testified that "[t]here is not an exemption that is given to employees that have, you know, a lot of experience" and he was "not aware of a process in [their] industry where if there is a required training, that credit is given based off of experience versus actually completing the training." (Maddox Depo. at 52:9-17).

Powers was given a written warning on June 22, 2021, advising him to complete his training by the end of June 2021. (Powers Depo. at 95:14-98:6, Ex. 7). However, he did not complete his training by the end of June 2021. (Id. at 98:4-6, 100:6-20; Maddox Depo. at 66:16-67:5). In July 2021, Maddox had another conversation with Powers regarding his late training. (Maddox Depo. at 117:24-118:2).

In early August 2021, Maddox gave Powers a "Partially Meets Expectations" performance evaluation because of his disregard for completing training on time. (Id. at 82:1-12). Maddox testified that he considered it unacceptable for Powers, as a member of Catalent's Site Leadership Team, to be 200-plus days late on his required training. (Id. at 118:9-119:3). Maddox believed that Powers's failure to complete his training on time as a member of the leadership team was "a slap in the face" and "showed a lack of commitment . . . to fulfill basic job responsibilities" that necessitated termination. (Id. at 113:18-114:19). Maddox acknowledged that there was no set rule on how many days delinquent on completing a training an employee could be. (Id. at 93:7-94:3). According to Maddox, this was because "the expectation was to complete the training on time" and "[t]he policy was complete your training on time, which is why there is a due date." (Id.).

Powers was the only Site Leadership Team member who was grossly late on his training. (Id. at 120:3-10). Tyler Griffin, Director of Manufacturing Operations and member of the Site Leadership Team, has never been late on his training. (Griffin Depo. at 12:23-13:1). Eric Woosley, a member of the Site Leadership Team, has never been late completing his

required training. (Woosley Depo. at 6:23-8:8). Woosley has never had to write up an employee for being late on training because his employees corrected the late training after being verbally warned about the issue. (Id. at 27:23-28:10).

Powers made various excuses as to why he never completed the training, at one point telling O'Dell that he did not have time to complete his training. (O'Dell Depo. at 55:21-25).

### D. **Other Issues with Plaintiff's Performance**

Throughout his time at Catalent, there were issues with Powers's interpersonal skills with Catalent leadership complaining to Maddox multiple times about complaints they had received about Powers. (Maddox Depo. at 78:13-79:13). This led to Maddox verbally counseling Powers two or three times regarding his "interaction skills" with people. (Powers Depo. at 66:1-22). Additionally, Maddox coached Powers on his approach and body language with coworkers. (Maddox Depo. at 78:1-6).

Similarly, O'Dell testified that he verbally counseled Powers multiple times about the way he treated coworkers, telling him not to bully people, not to speak to them in a derogatory way, and not to belittle them. (O'Dell Depo. at 48:5-49:2). In fact, Powers was so abrasive with coworkers

that O'Dell refused to conduct investigations with Powers because "[h]e treat[ed] people horribly." (Id. at 49:23-50:16). But, for his part, Powers testified that O'Dell only spoke to him once about how he spoke to Catalent employee Sharlene Feingold. (Powers Depo. at 68:8-15).

Griffin, who considers Powers his friend, also verbally counseled Powers about the way he treated people; he felt that Powers was mean-spirited with his coworkers and recalls that Powers "made some people cry." (Griffin Depo. at 46:25-48:19). Griffin, however, never recommended that Powers be disciplined for his treatment of employees. (Id. at 53:9-14).

Although Maddox believed as of August 2021 that Powers "had taken efforts" to soften his approach with employees (Doc. # 36-1, Ex. 1; Maddox Depo. at 81:7-13), Powers's poor communication with other employees was a factor in his termination. (Maddox Depo. at 120:15-22). Although the poor communication was a factor, Maddox testified that Powers would not have been fired if Powers had completed his training in a timely fashion after his June 2021 written warning. (Id. at 113:9-17).

In addition to his poor communication skills, Powers displayed poor decision-making skills, at one point drafting a Motorized Vehicle and Bicycle Registration Form that gave

8

Catalent the right to put Denver boots on vehicles and handing it out to his coworkers. (Powers Depo. at 83:21-84:13, Ex. 4; Maddox Depo. at 79:4-13). Both Maddox and O'Dell advised Powers the form was inappropriate, and Powers had to revise it. (Powers Depo. at 85:7-16). The Motorized Vehicle and Bicycle Registration Form and poor decision-making were cited in Maddox's request to terminate Powers. (Maddox Depo. at 91:4-92:12, Ex.12).

### E. Claims of Age Discrimination

Powers alleges that Sharlene Feingold, a member of the administration team, was subject to age discrimination by Maddox. However, Feingold reported to Powers at one point, and he was dissatisfied with her work, counseled her about her PTO time, and gave her a poor performance evaluation. (Powers Depo. at 73:5-77:3). Maddox was never Feingold's supervisor. (Maddox Depo. at 30:18-23).

Maddox never told Powers that Feingold was to be terminated, let alone because of her age. (Powers Depo. at 72:13-73:1). Maddox never even talked to O'Dell about terminating Feingold. (O'Dell Depo. at 29:4-25; 30:15-31:7). Additionally, Feingold worked for Catalent until July 14, 2023, well after Maddox voluntarily left Catalent in February 2022. (Jackson-Hill Decl. at ¶ 6; Maddox Depo. at 6:16-7:2).

Similarly, Powers alleges Maddox discriminated against Kathy Fontaine, an executive assistant. (Doc. # 1 at ¶ 13). He alleges that he heard Maddox ask O'Dell if Fontaine was old enough to retire and asking O'Dell why Fontaine had not retired. (Powers Depo. at 78:17-81:14). Powers testified that Maddox wanted to find a way to fire Fontaine because he "[didn't] need an executive assistant" and stated, "If I was her age, I would just have — I would have enough money built up to retire." (Id.).

Maddox denies this allegation and recalls that Fontaine worked past her original retirement date at the request of Catalent. (Maddox Depo. at 89:14-15). Indeed, Catalent asked Fontaine to stay past her retirement date three times. (O'Dell Depo. at 33:8-34:12). Fontaine voluntarily retired on March 30, 2022, after working for Catalent for thirty-one years. (Jackson-Hill Decl. at ¶ 7).

Despite being aware of Catalent's anti-harassment and discrimination policies, Powers never complained to anyone at Catalent about age discrimination. (Powers Depo. at 87:6-89:4). Importantly, Powers cannot recall a single conversation where Maddox made age-related comments about him, and Maddox never told Powers that he wanted to hire someone younger than him. (Id. at 89:5-12, 104:2-4).

10

Similarly, Catalent did not hire Woosley to replace Powers. Instead, Catalent hired Woosley as EHS Director, a completely different role than Powers held, on June 28, 2021, months before Powers was terminated. (Maddox Depo. at 101:22-102:11). When he was hired, Woosley was forty-eight years old. (Woosley Depo. at 5:1-14). Maddox interviewed and hired Woosley, who had a white goatee at the time of his hire. (Id. at 26:2-17). Lastly, Powers's replacement was Patrick Ricks, a man also in his 50s. (Id. at 19:16-25, 27:4-6; O'Dell Depo. at 71:16-24).

Maddox testified that age was never a factor in Catalent's employment decisions. (Maddox Depo. at 107:19-23). Catalent paid for Griffin to obtain his MBA, and he graduated in May 2023, when he was fifty-one years old. (Griffin Depo. at 52:2-11).

**F. <u>Plaintiff's Termination</u>**

Maddox gave Powers his 2021 performance review on August 6, 2021, with a rating of "Partially Met Expectations". (Maddox Depo. at 71:9-18, Ex. 9, 10). At the time of his performance review, Powers still had not completed all required training. (Id. at 120:23-121-4).

"Frustrated" by Powers's failure to complete his required training, despite multiple instructions to do so, on

August 17, 2021, Maddox asked O'Dell to begin the termination process citing Powers's failure to complete training, his second partially meets expectations performance rating, and his employee relations approach. (Maddox Depo. at 68:10-12, 91:4-92:12, Ex.12). As of August 17, Powers still had not completed all his trainings. (Id. at 118:3-8).

Maddox did not consider placing Powers on a Performance Improvement Plan in lieu of termination due to his blatant disregard for completing his training. (Id. at 95:16-25). Additionally, Powers's performance in his role as Site Security Leader was in the bottom quartile of all Site Security Leaders at Catalent. (Id. at 100:1-3).

Catalent terminated Powers's employment on September 7, 2021, but gave him the option to resign in lieu of a termination and paid him through October 1, 2021. (Powers Depo. at 101:4-25). At this time, Powers was sixty-one years old. (Id. at 7:24-25).

Powers testified that, at the meeting during which he was terminated, O'Dell "said he wasn't aware of the exact cause that [Maddox] was terminating [Powers]" but O'Dell "went on to say, you know, '[Maddox], he most likely wants to go a different direction, possibly someone younger.'" (Id. at 103:13-23). Immediately after testifying to this, Powers was

12

asked "So [O'Dell] told you that [Maddox] wanted to hire someone younger?" to which Powers responded "Yes." (Id. at 103:24-104:1). However, Powers also agreed that O'Dell told him that O'Dell "wasn't sure why [Powers was] being terminated." (Id. at 104:5-7). Indeed, Powers further quoted O'Dell as saying, when asked the reason for Powers's termination, "I don't know, man, I just think [Maddox] wants to go with someone younger." (Id. at 105:1-3).

O'Dell denies telling Powers he was being terminated due to his age or stating that he was unaware that Powers was going to be terminated. (O'Dell Depo. at 68:17-69:2). O'Dell had been aware since August 17, 2021, that Powers was going to be fired. (Maddox Depo. at 91:4-92:12, Ex.12).

Maddox was the only person who Powers believes discriminated against him because of his age. However, Maddox never made any comments to Powers about his age. (Powers Depo. at 108:8-19).

Even if Powers had completed his training after August 17, 2021, when Maddox had made the decision to terminate him, but before his actual termination on September 7, Maddox would still have terminated Powers for his basic lack of accountability and because of the numerous chances he had

given Powers to complete his training. (Maddox Depo. at 103:23-104:15).

Again, Powers's ultimate replacement was Patrick Ricks, who was between fifty-three and fifty-five years old at the time. (Doc. # 36-11, Ex. 11; Woosley Depo. at 19:22-25, 27:4-6; O'Dell Depo. at 71:16-22).

### G.   Procedural History

Powers initiated this action on August 11, 2022, asserting claims for age discrimination under the ADEA and the FCRA (Counts I and II), disability discrimination under the ADA and the FCRA (Counts III and IV), and worker's compensation retaliation in violation of Florida Statute § 440.02 (Count V). (Doc. # 1). Catalent filed its answer (Doc. # 12), and the case proceeded through discovery.

Now, Catalent seeks summary judgment on all claims. (Doc. # 32). Powers has responded (Doc. # 35), and Catalent has replied. (Doc. # 38). The Motion is ripe for review.

## II.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the

14

existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true, and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. **Analysis**

In his complaint, Powers asserts claims for age discrimination under the ADEA and the FCRA (Counts I and II), disability discrimination under the ADA and the FCRA (Counts III and IV), and worker's compensation retaliation in violation of Florida Statute § 440.02 (Count V). (Doc. # 1).

A.   **Disability      Discrimination      and      Worker's Compensation Retaliation**

First, Catalent seeks summary judgment on Powers's disability discrimination claims (Counts III and IV) and his worker's compensation retaliation claim (Count V).

In his response, Powers "acknowledges that the record is devoid of any genuine issues of material fact related to" these claims. (Doc. # 35 at 1 n.1). He "concedes those" claims and only opposes summary judgment for the age discrimination claims. (Id.). Thus, Powers has abandoned his disability discrimination and worker's compensation retaliation claims. See Edmondson v. Bd. of Trustees of Univ. of Ala., 258 F. App'x 250, 253 (11th Cir. 2007) ("In opposing a motion for summary judgment, a party may not rely on her pleadings to avoid judgment against her. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); Powell v. Am. Remediation & Env't, Inc., 61 F. Supp. 3d 1244, 1253 n.9 (S.D. Ala. 2014) ("[W]here the non-moving party fails to address a particular claim asserted in the summary judgment

motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned."), aff'd, 618 F. App'x 974 (11th Cir. 2015).

Upon review of Catalent's arguments and given Powers's abandonment of these claims, the Court grants the Motion as to Counts III, IV, and V. Summary judgment is appropriate on these claims.

### B.  **Age Discrimination**

Age discrimination actions under the FCRA are analyzed under the same framework as the ADEA. Mazzeo v. Color Resols. Int'l, LLC, 746 F.3d 1264, 1266 (11th Cir. 2014). Thus, the Court addresses the ADEA and FCRA age discrimination claims together.

"The ADEA prohibits employers from firing employees who are forty years or older because of their age." Liebman v. Metro. Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015). "To assert an action under the ADEA, an employee must establish that his age was the 'but-for' cause of the adverse employment action." Id. "This showing can be made through either direct or circumstantial evidence." Id.

### 1.   **Direct Evidence**

In opposing summary judgment, Powers first argues that he has presented direct evidence of discrimination. Specifically, Powers relies on the statements by O'Dell, Catalent's Human Resources Director at the time, to Powers immediately after Powers was terminated. (Doc. # 35 at 13-14).

"Direct evidence of discrimination is evidence that reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee, and, if believed, proves the existence of a fact *without inference or presumption*." Ossmann v. Meredith Corp., 82 F.4th 1007, 1015 (11th Cir. 2023) (citation omitted). "This is a 'rigorous standard.'" Id. (citation omitted). "[C]ourts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination." Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989). "To constitute direct evidence, a statement must '(1) be made by a decisionmaker; (2) specifically relate to the challenged employment decision; and (3) reveal blatant discriminatory animus.'" Castro v. Sch. Bd. of Manatee Cnty., Fla., 903 F. Supp. 2d 1290, 1299 (M.D. Fla. 2012) (quoting Chambers v.

Walt Disney World Co., 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001)).

Here, accepting as true Powers's version of events (which O'Dell denies), no statement was made by the decisionmaker Maddox. Rather, after Powers was terminated, Powers asked the Human Resources Director O'Dell for the reason for the termination. According to Powers, O'Dell said that he did not know the reason for the termination. (Powers Depo. at 103:19-21, 104:5-7, 105:1-3). Rather, O'Dell said that he thought Maddox "most likely wants to go a different direction, possibly someone younger." (Id. at 103:21-23). Indeed, according to Powers, O'Dell stated "I don't know, man, I just think [Maddox] wants to go with someone younger." (Id. at 105:1-3).

Thus, at most, there is evidence that another employee — not the decisionmaker for the termination — *speculated* after Powers's termination that Powers's age was the cause for Maddox's termination decision. There are no blatant remarks here that reveal an intent to discriminate by Catalent. See Fernandez v. Trees, Inc., 961 F.3d 1148, 1156 (11th Cir. 2020) ("If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." (citation omitted)). The alleged statements here fall short

of direct evidence of discrimination by the decisionmaker Maddox. Compare Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (stating that "[o]ne example of direct evidence would be a management memorandum saying, 'Fire Earley — he is too old'"). Powers cannot survive summary judgment based on the direct evidence theory.

### 2. **Circumstantial Evidence**

Alternatively, Powers maintains that there is sufficient circumstantial evidence to defeat summary judgment. (Doc. # 35 at 14).

When a plaintiff relies on circumstantial evidence, the framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), may apply. Liebman v. Metro. Life Ins. Co., 808 F.3d at 1298. "To make a prima facie case of age discrimination, the employee must show: (1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged." Id. "Once an employee has established a prima facie case, the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the

21

adverse employment action." Id. (citation and internal quotation marks omitted). "If the employer proffers a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the employer's reason is a pretext." Id.

But the McDonnell Douglas framework is not the only method of surviving summary judgment available to plaintiffs. See Sims v. MVM, Inc., 704 F.3d 1327, 1333 (11th Cir. 2013) ("Although our Kragor decision and our holding today reaffirm the use of the McDonnell Douglas framework in ADEA cases, this framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case."). An employee may survive summary judgment if a jury may infer intentional discrimination from a "convincing mosaic" of circumstantial evidence. Lewis v. City of Union City, 934 F.3d 1169, 1185 (11th Cir. 2019). A "convincing mosaic" may be shown "by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." Id. (citation omitted).

Here, whether analyzed under McDonnell Douglas or as a convincing mosaic, summary judgment for Catalent is appropriate. Applying the McDonnell Douglas framework first, the Court will assume, without deciding, that Powers has established a prima facie case of age discrimination based on his age (sixty-one) at the time of his termination, his being qualified for his job, and his replacement's younger age (five to seven years younger).

And, for its part, Catalent has provided legitimate, non-discriminatory reasons for terminating Powers: Powers's failure to complete training despite multiple warnings, his second partially meets expectations performance rating, and his employee relations approach. (Maddox Depo. at 90:12-96:14, Ex. 12). These justifications are supported by the evidence that Powers was grossly late on at least one training at the time of his termination, the performance evaluations from the years 2019 and 2021 scoring Powers as "Partially Meets Expectations," and the significant testimony about Powers's poor interpersonal communication skills that had required counseling by Maddox and O'Dell. (Id. at 66:1-67:5, 71:9-18, 78:13-79:13, 117:24-118:8, 120:3-10, 120:15-22, Exs. 9, 10, 12; O'Dell Depo. at 48:5-49:2; Griffin Depo. at 46:25-

48:19; Powers Depo. at 66:1-22, 68:8-15, 90:6-92:8, 93:20-94:2, 95:8-98:6, 100:16-20, Exs. 5, 7).

Thus, the burden shifts back to Powers to establish a genuine issue of material fact as to pretext. This he cannot do. The Eleventh Circuit has "repeatedly emphasized that '[p]rovided . . . the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it.'" Gogel v. Kia Motors Mfg. of Georgia, Inc., 967 F.3d 1121, 1136 (11th Cir. 2020) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)); see also Worley v. City of Lilburn, 408 F. App'x 248, 251 (11th Cir. 2011) ("A legitimate nondiscriminatory reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible retaliation or discrimination."). "Thus, to establish pretext at the summary judgment stage, a plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Gogel, 967 F.3d at 1136 (citation omitted). "[A] reason is not pretext for discrimination 'unless it is shown *both* that the reason

24

was false, *and* that discrimination was the real reason.'"
Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344,
1349 (11th Cir. 2007) (citation omitted). The Court cannot
second guess the defendant's business judgment or inquire as
to whether its decision was "prudent or fair." Damon v.
Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th
Cir. 2003).

Powers does not rebut that he failed to timely complete
his trainings, had issues communicating with co-workers and
with poor decision-making. Although he insists that he
completed some of his required trainings (Doc. # 36-5, Ex. 5;
Doc. # 36-7, Ex. 7; Doc. # 36-8, Ex. 8), he does not deny
that he failed to timely complete all his trainings before
Maddox made the decision to terminate him. (Powers Depo. at
95:14-98:6, Ex. 7; Maddox Depo. at 91:4-92:12, 118:3-8,
Ex.12). Importantly, he did not complete his training by the
end of June 2021 — the clear deadline set by the written
warning Maddox gave him — or for months afterwards. (Powers
Depo. at 98:4-6, 100:6-20; Maddox Depo. at 66:16-67:5). Nor
does he deny the instance of poor decision-making cited by
Maddox in which Powers distributed a memo about putting boots
on employees' cars. (Powers Depo. at 83:21-84:13, Ex. 4;
Maddox Depo. at 79:4-13). Finally, although he downplays the

25

extent of his issues interacting with other employees and insists his performance was improving (Doc. # 36-1, Ex. 1; Maddox Depo. at 81:7-13), Powers does not deny that he had been counseled both by Maddox and O'Dell regarding his interactions with other employees. (Powers Depo. at 66:1-22, 68:8-15; O'Dell Depo. at 48:5-49:2; Maddox Depo. at 78:13-79:13). Thus, Powers has not shown that Catalent's reasons for terminating him were false.

Rather, to establish pretext, Powers relies on O'Dell's alleged speculation that age was the reason for Powers's termination, the lack of a final written warning before his termination, Maddox's alleged favoritism towards younger female employees, Maddox's alleged ageist comments about Fontaine, and Maddox's alleged better treatment of Senior Leadership Team members O'Dell and Griffin. (Doc. # 35 at 16-19). But, according to Powers's testimony, O'Dell did not know the reason for Powers's termination and only suspected that Powers's age was the reason. (Powers Depo. at 103:18-104:7). One individual's speculation about the reason for the termination does not suggest that age discrimination was the true reason given that Powers cannot deny the truth of the reasons given by the decisionmaker Maddox.

Next, although Maddox did not give Powers a final written warning before terminating him under Catalent's progressive discipline policy, it is undisputed that supervisors could skip steps in the progressive discipline policy and proceed directly to termination if they believed it was warranted. (O'Dell Depo. at 21:12-21; Griffin Depo. at 7:4-20; Woosley Depo. at 6:8-18). Here, Maddox gave Powers a written warning in June 2021 and then followed up with Powers again in July 2021 about the need to complete the trainings, which had not been completed by the June 30 deadline set in the written warning. (Powers Depo. at 95:14-98:6, Ex. 7; Maddox Depo. at 117:24-118:2). Even after this, Powers failed to complete all trainings. Maddox considered Powers's continued failure to complete all required trainings despite much prodding to be a severe infraction — "a slap in the face" — warranting termination. (Maddox Depo. at 113:18-114:19). Thus, the decision to terminate Powers without a final written warning, which was within Maddox's discretion to make, does not support an inference of discrimination. See Ritchie v. Indus. Steel, Inc., 426 F. App'x 867, 873 (11th Cir. 2011) ("Other circuits have explained that, when an employer has established a progressive discipline policy, a plaintiff may establish pretext by showing that the policy was not followed in his

27

case. Nevertheless, if management has discretion as to whether to follow the discipline policy, then a failure to follow the policy does not show pretext." (citations omitted)).

Furthermore, Powers has not pointed out another Senior Leadership Team member who was late on his trainings but was not fired. There is no evidence that O'Dell (who was not supervised by Maddox) or Griffin were ever late on their trainings. (Griffin Depo. at 12:23-13:1; O'Dell Depo. at 6:6-19). As to Powers's perception that Maddox preferred younger female employees (Powers Depo. at 58:21-59:5), there is no evidence of any employee — let alone a younger employee — who did not face discipline for failure to complete trainings. Thus, there are no appropriate comparators to suggest that age was the true reason for Powers's termination. See Lewis, 918 F.3d at 1226-28 (holding that "a plaintiff proceeding under McDonnell Douglas must show that she and her comparators are 'similarly situated in all material respects'" and noting that ordinarily a similarly situated comparator "will have engaged in the same basic conduct (or misconduct) as the plaintiff" and "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff").

Finally, Maddox's alleged ageist comments about the older employee Fontaine do not establish pretext or otherwise create a triable issue about discrimination against Powers. True, Powers testified that Maddox wished to fire Fontaine and inquired why Fontaine had not retired yet. (Powers Depo. at 78:17-81:14). But Fontaine was never fired. Instead, Catalent asked Fontaine to stay past her retirement date three times until she finally retired in March 2022. (Maddox Depo. at 89:14-15; O'Dell Depo. at 33:8-34:12; Jackson-Hill Decl. at ¶ 7). Considering the circumstances of Fontaine's continued employment and eventual retirement, Maddox's statements related to Fontaine's age are isolated remarks insufficient to establish pretext for Powers's termination. See Rojas v. Fla., 285 F.3d 1339, 1343 (11th Cir. 2002) ("Because [the supervisor's] alleged comment [that another employee did not deserve her job (a higher-ranking job than plaintiff held) because that employee was a woman] was . . . an isolated comment, unrelated to the decision to fire [plaintiff], it, alone, is insufficient to establish a material fact on pretext.").

In short, Powers has failed to establish that Catalent's legitimate, non-discriminatory reasons for his termination were pretextual. Furthermore, the same flaws in Powers's

pretext argument and evidence weigh against the finding of a convincing mosaic of discrimination. Ultimately, there is insufficient evidence for a reasonable jury to conclude that Catalent discriminated against Powers based on age. No reasonable jury could conclude that age discrimination was the "but-for" cause of Powers's termination.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Catalent Pharma Solutions, LLC's Motion for Summary Judgment (Doc. # 32) is **GRANTED.**

(2)   The Clerk is directed to enter judgment in favor of Defendant Catalent Pharma Solutions, LLC and against Plaintiff Mark E. Powers on all counts of the complaint.

(3)   Thereafter, the Clerk is directed to terminate all pending deadlines and **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>6th</u> day of December, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE